# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BAIT PRODUCTIONS PTY LTD.,**

          **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:12-cv-1637-Orl-31DAB**

**DOES 1-73,**

          **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration after Status Conferences ordered by the Court. Plaintiff Bait Productions Pty Ltd., the Australian developer, producer, and distributor of the motion picture *Bait*[1], has filed suit against seventy-three individuals alleging that these Defendants unlawfully obtained and distributed for free unauthorized copies of *Bait* via a peer-to-peer network using the BitTorrent protocol. Doc. 1. This case is just one of twenty-five identical cases[2] filed by Bait Productions in this district against a total of 1,536 Defendants involving copyright infringement by the BitTorrent protocol. Chief Judge Anne C. Conway of the Middle District of Florida requested the undersigned to hold a hearing in all of the Bait Productions cases and make a recommendation to all of the District Judges regarding the uniform joinder or severance of the claims in the 25 Bait Productions cases against the 1,536 Defendants across the Middle District. A hearing was held on December 10, 2012 at which Plaintiff's counsel addressed the issues of joinder and case management. Doc. 11.

---

[1] *Bait* is a mainstream movie regarding a shark attack that takes place in an Australian shopping center and is not an "adult film."

[2] Exhibit A lists all 25 Bait Productions Pty Ltd. cases in the District.

Because it appears that the additional defendants have been improperly or imprudently joined in each of the 25 lawsuits, it is respectfully **RECOMMENDED** that in each case all defendants except the first named be dismissed with leave to file separate actions against as many of them as Plaintiff wishes to pursue, with a new filing fee to be paid for each action filed. It is further recommended that all Bait Production cases in the Middle District (pending and future) be assigned to a single District-Magistrate Judge pair to facilitate consistent case management.[3]

As discussed below, the cases under consideration here are not the only collection of cases alleging copyright infringement based on file sharing over the Internet. Given the proliferation of multiple such cases based on a single copyrighted work against multiple defendants, it is also **RECOMMENDED** that the Chief Judge or the Board of Judges consider comparable case management and severance for all such cases.

*Federal Rule of Civil Procedure 20*

Pursuant to Federal Rule of Civil Procedure 20, which allows permissive joinder of claims, a plaintiff may join claims against defendants if the claims "aris[e] out of the same transaction, occurrences, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." FED. R. CIV. P. 20(a)[4]. A party seeking joinder of claimants under Rule 20 must establish two prerequisites: (1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined. *Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). The central

---

[3]Under the Local Rules of this Court, related cases that are transferred or consolidated are assigned to the judges who drew the first filed case.

[4]Federal Rule of Civil Procedure 20(a)(2) states in pertinent part: "Persons . . . may be joined in one action as defendants if (A) any right to relief is asserted against them, jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and (B) any question of law or fact common to all defendants will arise in the action. Fed.R.Civ.P. 20(a)(2)(A) & (B).

purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. *Id*. "The broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs,* 383 U.S. 715, 724 (1966). Although the preconditions for permissive joinder are construed generously to permit the broadest scope of action commensurate with traditional notions of justice and fair play, the court possesses equally broad discretion to sever parties based on misjoinder. *See Alexander,* 207 F.3d at 1323. Rule 20(b) and Rule 42(b) vest in the district court the discretion to order separate trials or make such other orders as will prevent delay or prejudice. *Id.* "All logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* The determination of whether the situation constitutes the same transaction or occurrence for purposes of Rule 20 is determined on a case by case basis. *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

The transactional test requires that, to be joined, parties must assert rights, or have rights asserted against them, that arise from related activities – a transaction or an occurrence or a series of such. "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule." *Id.* at 1333. Courts look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE 2D § 1653. Here, the record indicates that the parties and claims are not reasonably related or properly joined.

### *Defendants In The* **Bait** *Cases Are Improperly Joined*

Bait Productions did not explicitly address in the Complaint in this case why the seventy-three Defendants – known only by their Internet Protocol ("IP") addresses – were joined in a single case.

However, Plaintiff describes the process by which it believes its movie was copied: in transferring its movie *Bait* via BitTorrent, one defendant shares the original copy (the "seed") with a torrent network. Doc. 1. Other users and the network connect to the seed file to download it, and as additional users request the same file, each additional user becomes a part of the network from which the file can be downloaded (the "swarm"). Doc. 1. However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded the file that together comprises the whole; the effect of this technology makes every downloader also an uploader of the illegally transferred file and the distributed nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users. Doc. 1. Plaintiff alleges that, because of the nature of the downloads described above, every infringer is stealing copyright materials from many Internet Service Providers ("ISPs") in numerous jurisdictions around the country. Doc. 1.

At the hearing on December 10, 2012, counsel for Bait Productions explained that the reason the Doe Defendants are grouped into 25 separate suits is based on the commonality of eleven separate "hash-tags" of the files from which the original copy was downloaded. The "hash-tag" indicates which "seed file," or initially uploaded file, began the infringing activity that eventually led to the wider "swarm." The hash-tag is a string of letters and numbers used to compare a downloaded copy of the file to the original file to ensure that the downloaded file is error-free and can be reconstituted into the full film for viewing. The Defendants are not grouped by Divisions of the Middle District where they reside; instead, they are broken down into groups of no more than 75 Defendants based on counsel's informal discussions with judges as to their preferences for maximum case sizes[5]. The

---

[5]Plaintiff's counsel has practiced intellectual property law for more than 20 years. He has never represented any of the "adult film" litigants. Counsel has filed other suits alleging copyright infringement by BitTorrent of four other mainstream films.

cases are further grouped by date, and the residence of the first infringer dictates where the case gets filed.

Turning to the law of permissive joinder in general, courts have traditionally severed claims against unrelated defendants where the only similarity between the defendants are the allegations that they violated the same statute or acted in the same manner. *See, e.g., DIRECTV v. Loussaert*, 218 F.R.D. 639, 643-644 (S.D. Iowa 2003) (ordering severance of allegations against unrelated defendants who had allegedly violated the same statute, but where the alleged violations of each defendant did not arise out of the same transaction or occurrence); *Turpeau v. Fidelity Financial Services, Inc.,* 936 F.Supp. 975, 978 (N.D. Ga. 1996) (misjoinder where each plaintiff had a separate and unrelated claim against separate unrelated lenders and life insurance defendants who happened to have engaged in a similar practice of allegedly overcharging for credit life insurance), *aff'd*, 112 F.3d 1173 (11th Cir. 1997). Even if the counts in a plaintiff's complaint arise from the same series of occurrences, the Court may exercise the discretion afforded it to order a severance to avoid causing unreasonable prejudice and expense to the defendants and to avoid a great inconvenience in the administration of justice. 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1652 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay.").

In the most recent cases involving videos and video games distributed via the relatively new technology of BitTorrent, and filed against numerous Doe defendants, a number of courts have addressed whether there has been misjoinder of large numbers of Doe defendants who participated in sharing the same video or game file. The analysis and conclusions are not uniform.

As Judge Seitz of the Southern District of Florida explained just two months ago in *Aerosoft GmbH v. John Does 1-50,* No. 12-Civ-21489, 2012 WL 5272270, *3-*5 (S.D. Fla. Oct. 23, 2012):

Numerous courts across the country have addressed the contested issue of whether joining numerous Doe Defendants, who have used BitTorrent protocol, in a single lawsuit is proper under Rule 20(a)(2). Courts are in conflict over whether downloading and sharing/uploading a file using the BitTorrent protocol constitutes the same transaction, occurrence, or series of transactions or occurrences. Some courts have found joinder proper.[6] Other courts, however, have found misjoinder and severed all defendants except Doe One.[7] This Court recently addressed this exact issue in *Bubble Gum Productions, LLC v. Does 1–80*, Case No. 12–20367, DE–40 (July 19, 2012), and in *Sunlust Pictures, LLC v. Does 1–120*, Case No. 12–20920, DE–26 (July 24, 2012), and found that the use by multiple Does of the BitTorrent protocol to download and share the same file was not sufficient to establish proper joinder, thus, agreeing with the courts that have found misjoinder.

In *Bubble Gum,* the Court explained why the defendants' decision to obtain the BitTorrent protocol and download the same video does not in and of itself constitute the same transaction, occurrence, or series of transactions or occurrences:

> This is because the BitTorrent protocol facilitates the transactions between users, and "Much of the BitTorrent protocol operates invisibly to the user-after downloading a file, subsequent uploading takes place automatically if the user fails to close the program." *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, at *11 (E.D.N.Y. May 1, 2012) (Order and Report and Recommendation). As such, the users themselves are not choosing to engage in file sharing with other particular users; rather, the BitTorrent protocol is determining which users to connect to in order to obtain the additional pieces of a file. Thus, users are doing nothing more than initiating the file sharing process by obtaining the BitTorrent protocol and selecting a file for downloading. In fact, users can walk away from their computers and as long as the computer is still on, the filing sharing process continues for an indefinite period of time among an undefined number of users. Therefore, aside from downloading the same Video using BitTorrent protocol, there is nothing that connects all of the Doe Defendants to each other. *See Hard Drive Prods., Inc.*, 809 F Supp.2d at 1163 ("The bare fact that Doe clicked on a command to participate in the BitTorrent protocol does not mean that they were part of the

---

[6] *Aerosoft BmbH,* 2012 WL 5272270, *3 (citing *K–Beech, Inc. v. Does 1–57*, 2011 WL 5597303 (Report and Recommendation), *adopted by*, 2011 WL 5597293 (M.D.Fla.2011); *Nu Image, Inc. v. Does 1–3,932*, 2012 WL 1890854 (Report and Recommendation), *adopted by*, 2012 WL 1890829 (M.D.Fla.2012); *Digital Sin v. Does 1–176*, 279 F.R.D. 239, 2012 WL 263491 (S.D.N.Y. Jan.30, 2012); *Third Degree Films, Inc. v. Does 1–108*, 2012 WL 669055 (D.Md. Feb.28, 2012); *Pacific Intern. v. Does 1–31*, 2012 WL 2129003 (N.D.Ill. June 12, 2012)); *Third Degree Films v. Does 1-36,* 2012 WL 2522151 (E.D.Mich. May 29, 2012).

[7] *Aerosoft BmbH,* 2012 WL 5272270, *3 (citing *Liberty Media Holdings v. BitTorrent Swarm*, 277 F.R.D. 669 (S.D.Fla., 2011); *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. May 1, 2012) (Order and Report and Recommendation); *DigiProtect USA Corp. v. Does 1–240*, 2011 WL 4444666 (S.D.N.Y. Sept.26, 2011); *Cinetel Films v. Does 1–1,052*, 2012 WL 1142272 (D.Md. Apr. 4, 2012); *Hard Drive Prods., Inc. v. Does 1–888*, 809 F.Supp.2d 1150 (N.D.Cal. 2011)).

>  downloading by unknown hundreds or thousands of individuals across the country or across the world"). This lack of connectivity is evidenced by the range of dates over which the Does in this case downloaded the Video-a period of six weeks, from December 13, 2011 until January 26, 2012. Further Plaintiff has not pled that any individual Doe copied or uploaded a piece from any other individual Doe. *See Hard Drive Prods., Inc*., 809 F.Supp.2d at 1163 (finding misjoinder because "[a]ny 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm"). Therefore, the Court cannot accept Plaintiff's arguments that Defendants' actions constitute the same transaction, occurrence, or series of transactions or occurrences.

In *Bubble Gum* and *Sunlust*, the Court also found that fundamental fairness and judicial economy considerations also favored severance.
\* \* \*
Plaintiff's second argument addresses the substance of joinder and attempts to differentiate this case from the circumstances in *Bubble Gum* and *Sunlust*. Plaintiff asserts that, unlike in *Bubble Gum* and *Sunlust*, here the information obtained by SKB establishes that each of the Does uploaded, or shared, a piece of the video game with SKB Logger [hired to detect illegal downloading] and that the pieces obtained from the Does could be aggregated into a whole copy of the video game. Thus, Plaintiff asserts the Does were involved together in the transaction or series of transactions. This argument is deceptive in its allure.

One of the reasons people use the BitTorrent protocol to share files is because it is faster than methods that require a person to download an entire file from a single source. Thus, while it is possible that it took SKB nearly six weeks to assemble a single whole from the pieces obtained from each of the Does, it is also possible, and more likely given the fact that the Does each entered the swarm at different times and on different dates, over a period of nearly six weeks, that SKB obtained many wholes over the course of the six weeks and each of the Doe Defendants contributed a piece to one of the wholes. Given the different dates and times each Doe was part of the swarm, it is possible that none of the Does contributed to the same whole or that only some of the Does contributed to any particular whole obtained by SKB Logger. Interestingly, Plaintiff does not plead that SKB Logger obtained a single copy of the whole and that each of the Does contributed a piece to that one copy; instead, it pleads that SKB "verified that re-assemblage of the pieces [obtained from the Does] using a BitTorrent Client results in a full copy of the [video game]." Simply because their pieces could be aggregated into a whole does not make the Does' uploading of the pieces part of the same transaction. Consequently, the Court finds that there is no difference between the circumstances in *Bubble Gum* and *Sunlust*, where the users of the BitTorrent protocol did not choose to engage in file sharing with other particular users, and the circumstances in this case, where none of the Does chose to engage in file sharing with other particular users or with SKB.

> Further, like in *Bubble Gum* and *Sunlust*, Plaintiff does not allege that the Does acted in concert or that they shared pieces with one another. Thus, all Plaintiff can really allege is that SKB Logger entered into an individual transaction with each of the Does and when all of the transactions between SKB and the Does were complete, SKB could assemble the pieces it had received from the Does into a whole copy of the video game. To argue that the Does acted together in the same transaction involving "the data flow from Does to SKB logger" would be equivalent to arguing that all bank depositors acted together in the same transaction in the flow of money into the bank. Clearly, such a situation cannot support joinder because the Does' actions do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Additionally, the same fundamental fairness and judicial economy considerations that the Court in *Bubble Gum* and *Sunlust* found favored severance are present here. Consequently, the Court finds misjoinder.

*Aerosoft GmbH, 1-50,* 2012 WL 5272270 at *5-*6 (vacating order allowing early discovery and quashing subpoenas seeking subscribers' identifying information for the IP addresses associated with Does 2-50).

The analysis and conclusion of Judge Seitz and the other courts that the requirements of Rule 20 for joinder are not met is persuasive. Plaintiff in this case has not offered any additional facts, circumstances or argument to alter that result.

As this Court has observed before, severance is also necessary to avoid a great inconvenience to the Court. A single misjoined action may reduce the plaintiff's fees and costs and be more convenient for its counsel; however, it imposes a significant burden on the Clerk's office which, each time an order is docketed in the case, is obliged to review every item filed, and potentially prepare and mail a copy of the order to all defendants who are *pro se* even when the order does not pertain to each defendant. *See, e.g., Tele-Media Co. of Western Connecticut v. Antidormi,* 179 F.R.D. 75, 76 (D. Conn. 1998) (finding the advantages of a single action can also be achieved through consolidation for pre-trial purposes).

Judge Whittemore in an unrelated case presenting the same posture, just last week, addressed these burdens on the Middle District, one of the busiest federal courts in the country, from a "wave" of lawsuits over copyright infringement through BitTorrent sharing of adult films: [8]

> In BitTorrent cases, a common argument raised by defendants is that the infringement was committed by others who had access to the defendant's IP address, resulting in innocent Doe defendants being sued. A defense of this nature would require unique factual proof as to each Defendant, essentially resulting in mini-trials on the merits having nothing to do with the other Defendants. Moreover, as evidenced by the pending motions to quash and for protective orders, various discovery motions are likely to be filed by the individual Doe Defendants, each involving unique arguments and individualized concerns.
>
> The likelihood of multiple unrelated motions and defenses leads to a conclusion that there are few, if any, litigation or judicial economies to be gained by joining these claims, notwithstanding the allegations that the Doe Defendants participated in the same swarm. Indeed, "[t]he only economy that litigating these cases as a single action would achieve is an economy to plaintiff–the economy of not having to pay a separate filing fee for each action brought." *Digital Sins,* 245, 2012 WL 1744838, at *3. By filing a single lawsuit against twenty-eight defendants, Malibu has paid only $350 in filing fees, rather than the $9,800 it would have paid if the lawsuits had been brought separately.
>
> Title 28 of the United States Code, Section § 1914(a), requires each party instituting a civil action to pay a filing fee of $350. This provision not only generates much needed revenue to offset the administrative cost of federal litigation but provides a "threshold barrier" against the filing of meritless lawsuits. *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2007 WL 737589, at *2 (M.D. Fla. Mar. 7, 2007); *see In re McDonald*, 489 U.S. 180, 184 (1989) (noting that filing fees, in theory, help discourage frivolous lawsuits and allocate judicial resources to more meritorious cases); *In re Diet Drugs*, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004)) (discussing §1914(a) as both a revenue raising measure and a threshold barrier against frivolous lawsuits). By filing multi-defendant complaints, Malibu's lawsuits have deprived the court of hundreds of thousands of dollars in much needed revenue, while burdening the docket with cases that are difficult to manage, in the traditional sense, without extraordinary judicial time and labor. Severance will enable efficient management of each case, preserve the purpose of filing fees and protect the docket against problematic filing practices. Accord *id.* at *13 ("Postponing a determination on joinder in these cases results in lost revenue of perhaps millions of dollars (from

---

[8]Judge Whittemore premised his conclusion to sever on Rule 21 rather than Rule 20. Contrary to Judge Seitz, he found that the requirements for Rule 20 joinder were technically satisfied. Nonetheless, he ordered severance under Rule 21 on prudential case management and fairness grounds. Though this analysis is somewhat different from that of the undersigned, the result–severance of individual defendants–is the same.

lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as may Doe defendants as possible.").

Some courts have opined that plaintiffs in BitTorrent litigation would be prejudiced by severance because they would face "significant obstacles in their efforts to protect their copyrights from illegal file sharers," including inordinate costs and filing fees. The argument that plaintiffs will not be able to pay the filing fees to support lawsuits against individual copyright infringers ignores the economic realities of BitTorrent copyright litigation. As noted, Malibu is already prosecuting cases with small numbers of defendants. Regardless of the economic impact on Malibu, severing these Doe Defendants and requiring filing fees commensurate with the impact on the docket imposes no greater harm on Malibu than that imposed on any other plaintiff in the federal courts. Indeed, those holding copyrights like Malibu who prevail on their infringement claims may recover the filing fees (and attorneys' fees) from the infringing defendants. See 17 U.S.C. § 505.13.

Most significantly, joinder generates significant case management concerns jeopardizing the court's ability to control its docket if Malibu proceeds on the merits. With twenty eight defendants, meaningful case management deadlines will not be reasonably achievable without extensive hearings. And when the identify of each John Doe defendant is eventually discovered by Malibu, the prospect of numerous amended complaints arises, an unnecessary exercise in contemporary litigation which will present an inordinate administrative chore for the Clerk, the court, and the parties. And the process of identifying the unknown defendants has the potential of prejudicing those defendants who are identified early on, who will likely languish in litigation beyond their control while Malibu pursues the identities of the other John Does. From a district wide perspective, the sheer volume of BitTorrent copyright cases and associated Doe defendants has the potential of overwhelming the docket. Simply put, effective management of these cases will be impractical.

For example, in this case, Malibu sought pre-service discovery to identify the John Does, which resulted in *sua sponte* orders implementing safety protocols to protect innocent defendants from being publicly identified as infringing on Malibu's copyrighted films, an unusual judicial action. Clearly, policing these safeguards adds another atypical burden on the docket. Moreover, as John Does 2, 7, and 15 have done in this case, Doe defendants in BitTorrent litigation frequently file discovery motions, motions to sever, motions to dismiss, and motions for change of venue. Similar motions from even a small number of the Doe Defendants in this case will undermine any plausible judicial economy in joining untold numbers of defendants. *Bubble Gum Prods.*, 2012 WL 2953309, at *4 ("[J]oinder would lead to cumbersome motion practice and, ultimately, minitrials involving different testimony and evidence."). Finally, assuming Malibu has an interest, as it represents that it does, in actually litigating this case on the merits, the logistics of managing a trial will be daunting.

*Malibu Media, LLC v. Does 1-28*, No. 8:12-cv-1667-T-27MAP (Doc. 22) (citations omitted). *See also*

*Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 232-33 (M.D. Tenn. 2001) (severing case with

477 claims finding it to be unmanageable because its "courtroom would seat only a small fraction of defendants and their attorneys, it [could] not even hold a hearing on the motions currently pending; it [could] not host a management conference; [and] it certainly [could] not try all – or even most – of the Plaintiffs' counts together.").

As the Court noted at the hearing, if every distributor of an illegally downloaded movie pursued their copyright claims in federal court, these cases would have the potential to overwhelm the federal courts and crowd out the court's ability to handle other civil and criminal cases. As of last week when the *Malibu* severance order issued, Judge Whittemore noted there were 83 copyright cases against 11,597 John Does pending in the Middle District of Florida. *Id*. at 14. This influx of federal claims suggests a need for specialized case management techniques that take into account the right of a copyright holder to pursue remedies and the practicalities of litigation.[9]

Accordingly, it is respectfully **RECOMMENDED** that all claims in this case and the related cases listed in Exhibit A except those against the respective Defendants Doe 1 be severed, and Bait Productions be ordered to file separate complaints against the other Doe Defendants against whom it wishes to proceed, along with a separate filing fees, within 14 days of any order adopting this Report and Recommendation. It is further recommended that all Bait Production cases in the Middle District (pending and future) be assigned to a single District-Magistrate Judge pair to facilitate consistent case management.

The Clerk is **DIRECTED** to docket this Report and Recommendation in the additional 24 cases listed in Exhibit A.

---

[9]As briefly discussed at the hearing, it is evident that the substantive copyright law and the procedures for protecting the rights created by statute are increasingly ill-matched to the realities of the digital age. Of course, considering alterations in those rights and procedures are matters reserved to institutions other than this Court.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 14, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Chief Judge Anne Conway
Counsel of Record
Courtroom Deputy

# EXHIBIT A
# RELATED CASES

2:12-cv-00628-UA-DNF Bait Productions Pty Ltd. v. Does 1-26

2:12-cv-00629-UA-DNF Bait Productions Pty Ltd. v. Does 1- 44

3:12-cv-01204-HES-JRK Bait Productions Pty Ltd. v. Does 1-66

3:12-cv-01205-MMH-JBT Bait Productions Pty Ltd. v. Does 1-42

3:12-cv-01252-UAMH-JBT Bait Productions Pty Ltd. v. Does 1-71

3:12-cv-01274-HWM-TEM Bait Productions Pty Ltd. v. Does 1-78

5:12-cv-00644-ACC-PRL Bait Productions Pty Ltd. v. Does 1-40

5:12-cv-00645-WTH-PRL Bait Productions Pty Ltd. v Does 1-36

6:12-cv-01637-GAP-DAB Bait Productions Pty Ltd. v. Does 1-73

6:12-cv-01721-ACC-GJK Bait Productions Pty Ltd. v. Does 1-31

6:12-cv-01779-PCF-TBS Bait Productions Pty Ltd. v. Does 1-81

6:12-cv-01780-RBD-DAB Bait Productions Pty Ltd. v. Does 1-96

8:12-cv-02464-VMC-MAP Bait Productions Pty Ltd. v. Does 1-36

8:12-cv-02465-JSM-TGW Bait Productions Pty Ltd. v. Does 1-71

8:12-cv-02466-MSS-MAP Bait Productions Pty Ltd. v. Does 1-70

8:12-cv-02467-VMC-AEP Bait Productions Pty Ltd. v. Does 1-72

8:12-cv-02468-JSM-MAP Bait Productions Pty Ltd. v. Does 1-54

8:12-cv-02469-VMC-TGW Bait Productions Pty Ltd. v. Does 1-71

8:12-cv-02470-JDW-EAJ Bait Productions Pty Ltd. v. Does 1-72

8:12-cv-02471-VMC-TGW Bait Productions Pty Ltd. v. Does 1-64

8:12-cv-02554-MSS-TGW Bait Productions Pty Ltd. v. Does 1-72

8:12-cv-02555-JDW-TBM Bait Productions Pty Ltd. v. Does 1-41

8:12-cv-02556-MSS-TGW Bait Productions Pty Ltd. v. Does 1-52

8:12-cv-02642-RAL-MAP Bait Productions Pty Ltd. v. Does 1-95

8:12-cv-02643-SCB-TBM Bait Productions Pty Ltd. v. Does 1-82